IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>NIGEL MARC GORDON,<br><br>　　　　Defendant. | 1:14-cr-312-WSD |

### OPINION AND ORDER

This matter is before the Court on Magistrate Judge Gerrilyn G. Brill's Report and Recommendation (the "R&R") [47] on Defendant Gordon's Motion to Suppress Statements [14]. The Magistrate Judge recommends that the motion be denied on the grounds that the challenged statements were not made during an interrogation and otherwise were volunteered by Defendant.

**I.    BACKGROUND**

Defendant is charged with unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count One); receipt and possession of a firearm not registered to him, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (Count Two); and possession with the intent to distribute a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (Second Superseding Indictment [26]).  He moves to suppress

statements he made to law enforcement officers on May 7, 2014, prior to his arrest.[1]

On May 7, 2014, investigating officers were called to the Mosaic Apartments in Sandy Springs, Georgia by apartment managers who reported drug trafficking in Apartment 10A at the complex. The managers reported this suspected drug activity based on their observation of people driving into the apartment complex parking area, then walking to Apartment 10A's back door, entering the apartment, and a very short time later, exiting the apartment and leaving the complex. The managers reported that a black male who drove a silver Chevrolet HHR lived in Apartment 10A.

After this call, Sandy Springs police officers conducted surveillance of Apartment 10A. They observed a man being allowed to enter the apartment after they saw him engage in a brief telephone conversation. A short time after entering, the man departed the apartment, returned to his car, and sat in the driver's seat. While sitting in the car, he was approached by Detective Derek Williams ("Williams"), who recognized the individual as Bobby Boonyapat, a person who

---

[1] Defendant does not object to the facts set out in the R&R and finding no plain error in them they are adopted by the Court. The Court presents in this Order a shortened version of the facts, but incorporates the facts set out in the R&R and relies on this more complete statement of facts in conducting its review.

2

had been arrested previously. Boonyapat stated he had purchased cocaine in Apartment 10A.

When Boonyapat was being arrested, officers noticed a black man walking from Apartment 10A. Boonyapat identified the man as the person from whom he had just purchased cocaine. The man, later identified as Defendant, entered a silver Chevrolet HHR. Sergeant Laughman ("Laughman"), in his unmarked police car, approached the HHR with his blue lights flashing. Laughman got out of his car, his police badge hanging around his neck, and approached Defendant. Laughman told Defendant he was investigating drug trafficking in the complex. He asked Defendant to identify himself and where he had been. Defendant acknowledged he had come from Apartment 10A. Defendant gave Laughman consent to search his car. The search did not disclose any contraband in the vehicle.

Laughman then requested canine Officer DeWald ("DeWald") to bring his dog to the apartment complex. Defendant overheard a conversation between DeWald and Laughman about deploying the dog to sniff outside of Apartment 10A. After overhearing the conversation, Defendant stated to DeWald that he smokes marijuana and that there was a small amount of marijuana in the apartment. This comment was not offered in response to any questions posed by

3

DeWald or Laughman. DeWald asked Defendant to repeat to Laughman what he had said to DeWald. Defendant repeated his remark.

Thereafter, Williams and DeWald released the drug dog in front of building 10 at the complex, and the dog alerted on Apartment 10A. Williams and DeWald went to the back door of the apartment. Kayla Powell opened the back door to leave the apartment and when she did, Laughman smelled burned marijuana coming from the apartment. Based on these observations, Williams departed the complex to apply for a warrant to search the apartment.

While waiting for the warrant to be issued, Defendant approached Laughman. Defendant asked Laughman if he could ask him a question. Laughman stated that he could. Defendant said that he liked to work with firearms, such as by putting sights and grips on them, and wondered if that conduct was prohibited since he was a convicted felon. Laughman responded that it was illegal for convicted felons to possess a firearm for any reason. Defendant and Laughman did not talk further.

After the warrant to search Apartment 10A was issued, a search of Apartment 10A was conducted. Officers seized a small volume of marijuana, five weapons in the living room, and a white, paste-like substance that Defendant first

claimed was caffeine paste. It was later determined to be cocaine.[2] After the search was conducted, Defendant said he wanted again to speak with Laughman. Defendant asked if there was anything Laughman could do to help him with the firearms charges, stating that the firearms seized during the search belonged to someone else, and he did not realize that they were still in the apartment.

On October 21, 2015, Defendant moved to suppress his statements (i) to DeWald, that he smoked marijuana and had it in his apartment; (ii) to Laughman, that he first stated that the paste was caffeine; and, (iii) to Laughman, that he liked to work on firearms, wondered if that was a problem, and whether Laughman could help him with the firearms charges, claiming the weapons found belonged to someone else. Defendant claims these statements were made without having been given the warnings required by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), or were elicited in violation of <u>Rhode Island v. Innis</u>, 446 U.S. 291 (1980), and thus the statements are required to be suppressed. The Magistrate Judge found the statements were not in violation of <u>Miranda</u> or <u>Innis</u> and recommended they are not required to be suppressed.

---

[2] Officers also found two safes in the kitchen. Williams asked the other officers if they had found the keys to the safes. Defendant, having overheard this question, said he had the keys in his pocket but there was nothing illegal in the safes.

On June 22, 2015, Defendant filed his objections to the R&R, again claiming that the statements he made are required to be suppressed because the statements were obtained in violation of Miranda and Innis.

## II.  STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal citations omitted).  With respect to those findings and recommendations to which a party has not asserted objections, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983). Defendant filed objections to the statements he made to DeWald and Laughlin and the finding and recommendations regarding these statements are reviewed *de novo*. The remaining findings and recommendations are reviewed for plain error.

6

### III. DISCUSSION

Warnings under Miranda "are required before any statement may be admitted . . . which was elicited from a person in custody through interrogation." Endress v. Dugger, 880 F.2d 1244, 1248 (11th Cir. 1989). A suspect in custody must be advised of his right to remain silent and his right to the assistance of counsel prior to any interrogation. Miranda, 384 U.S. at 444 ("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."). Miranda's safeguards apply to the "functional equivalent" of interrogations as well as official, custodial interrogations. Innis, 446 U.S. at 301.

An officer engages in the "functional equivalent" of interrogation when he engages in "words or actions . . . (other than those normally attending to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id.; United States v. Ubaldo-Viezca, 398 F. App'x 573, 579-80 (11th Cir. 2010) (quoting Innis, 446 U.S. at 300-02). The question is whether the words or actions of the authorities constitute coercive pressure "above and beyond that inherent in custody itself." Id. at 300. The Innis inquiry "focuses primarily upon the perceptions of the suspect." Id. at 301;

7

see also United States v. McKenzie, 132 F. App'x 788 (11th Cir. 2005) (police officer's conversation with defendant advising him that marijuana and cocaine were found in his room was not functional equivalent of interrogation when defendant responds); United States v. Hurst, 228 F.3d 751 (6th Cir. 2000) (Miranda warnings not required when law enforcement told defendant "we've got good information on you."); United States v. Payne, 954 F.2d 199 (4th Cir. 1992) (statement to suspect that gun was found at his house, to which suspect responded, was not interrogation).

A.  Statements to DeWald

Defendant overheard a conversation between DeWald and Laughman about deploying a dog to sniff Apartment 10A for the presence of controlled substances. After overhearing this conversation, Defendant stated to DeWald that he smokes marijuana and that there was a small amount of marijuana in Apartment 10A. This comment was not made in response to any question posed to Defendant. DeWald asked Defendant to repeat to Laughman what he had said to DeWald.[3] Defendant repeated his remark. Defendant argues that, under Innis, his comment to DeWald was made in the functional equivalent of an interrogation. The Court disagrees. Defendant simply overheard a discussion between two officers about an

---

[3] The comment voluntarily made to DeWald is admissible, and it is not made inadmissible because it was asked to be repeated to Laughman.

8

investigative step that they intended to pursue through the use of a drug dog. The discussion was not directed at Defendant. Having overheard the plan to use the drug dog, Defendant chose voluntarily to offer the information about his marijuana use and that there was marijuana in the apartment.

The record here does not support that DeWald's and Laughman's discussion about use of the drug dog was expected to elicit an incriminating response from Defendant. The circumstances, under which Defendant's statements were made, were not coercive and the exchange was not the functional equivalent of an interrogation. Having conducted its *de novo* review, the Court agrees with the Magistrate Judge's findings that Miranda warnings were not required to be given and the Court overrules Defendant's objection based on his statements to DeWald.

B.     Statements to Laughman

While waiting for the warrant to search Apartment 10A to be issued, Defendant approached Laughman. Defendant stated to Laughman that he liked to work with firearms including by putting sights and grips on them. Gordon wondered if that conduct was prohibited since he was a convicted felon. Laughman responded that it was illegal for convicted felons to possess a firearm for any reason. Defendant and Laughman did not talk further.

During the search of Apartment 10A pursuant to the search warrant, Laughman found a bowl containing a white paste-like substance. He asked Defendant about the substance, but then told Defendant he did not want to know the answer and would identify the substance himself.[4] Laughman left the apartment to retrieve a drug test kit from his car. Several minutes later, Laughman returned to the apartment and Defendant voluntarily stated to Laughman that the substance was caffeine paste, not cocaine.

After the search was conducted, Defendant again asked to speak with Laughman. When he did, he asked Laughman if there was anything he could do to help him with the firearms charges, stating that the firearms seized during the search belonged to someone else and he did not realize that they were still in the apartment. Defendant seeks to suppress these statements because he was not first given Miranda warnings.

The Court agrees with the Magistrate Judge's finding that these statements by Defendant were not in response to any question and were not the result of a custodial interrogation. In both cases regarding the firearms, Defendant asked to speak with Laughman. Laughman did not direct any questions to Defendant and Laughman apparently was unaware of the matters Defendant intended to raise

---

[4] Laughman stated that he told Defendant not to answer because he remembered that Defendant had not been given Miranda warnings.

when he asked to speak with him.  The statements Defendant volunteered to Laughman were not in response to a question asked of him.[5]  The record does not support that Laughman engaged in any conduct expected to elicit an incriminating response from Defendant.  The statements Defendant made were not in a coercive environment and the exchange was not the functional equivalent of an interrogation.  Having conducted its *de novo* review, the Court agrees with the Magistrate Judge's findings that <u>Miranda</u> warnings were not required to be given and the Court overrules Defendant's objection based on his statements to Laughman.

    C.    <u>Statements to Laughman about the marijuana seized during search and the safe keys</u>

Defendant does not object to the Magistrate Judge's findings and recommendation not to suppress Defendant's statements about the marijuana found

---

[5] That Laughman immediately retracted his question, left the apartment for five to eight minutes, and did not say anything further to Defendant before Defendant made his statement about the alleged caffeine paste, discredits Defendant's assertion that he felt "compelled" to respond to Laughman's question regarding the white paste.  The Court agrees with the Magistrate Judge's conclusion that it was reasonable for Laughman to assume that Defendant would not talk further about the white paste, including because Defendant volunteered his statement several minutes after Laughman told Defendant not to answer, and Laughman had not asked Defendant any further questions.

11

during the search and the keys to the safes in Apartment 10A.[6] The Court has reviewed the record and the Magistrate Judge's finding and recommendation regarding these statements and finds no plain error in them.

## IV. CONCLUSION

The Court having conducted its *de novo* review of those findings and recommendations to which Defendant objected and having reviewed the remaining findings and recommendation for plain error, for the reasons stated above,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** Magistrate Judge Gerrilyn G. Brill's Report and Recommendation [47].

**IT IS FURTHER ORDERED** that Defendant Gordon's Motion to Suppress Statements [14] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Objections [47] are **OVERRULED.**

**SO ORDERED** this 9th day of July, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[6] Defendant represents that the Government agreed not to introduce at trial his statements about the marijuana seized during the search or his statements about the safe keys.