IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | |
| v. | | 1:14-cr-312-WSD |
| NIGEL MARC GORDON, | | |
| Defendant. | | |

## OPINION AND ORDER

This matter is before the Court on Defendant Nigel Marc Gordon's ("Defendant") Motion to Reconsider Motion to Suppress Evidence [77] ("Motion for Reconsideration").

### I.   BACKGROUND

On May 7, 2014, Detective Derek Williams applied for and obtained, from Judge Roy Roberts, a judge of the Magistrate Court of Fulton County, a search warrant for Defendant's apartment. ([63.1], [68.1]). Detective Williams applied for the warrant from the Sandy Springs Police headquarters, using the court's video system for submitting the warrant application. ([38] at 12; [66]). Judge Robert's office is in downtown Atlanta. The search warrant application and affidavit supporting it ("Application and Affidavit") was signed by Detective Williams, and

time stamped at 6:01:23 p.m.  The Application and Affidavit was "[s]worn and subscribed to before" Judge Roberts, and the affidavit and all other evidence was given "under oath or affirmation."  ([68.1]).  The name and signature of the judge on the warrant is time stamped 6:02:14 p.m. ([63.1]).  The Magistrate Judge determined that the affidavit provides "ample probable cause for the search." (R&R at 4).  Defendant concedes that the application provides probable cause for issuance of the warrant.

On September 21, 2015, Defendant filed his Motion to Suppress Evidence [63] ("Motion to Suppress").  In it, he argues that the evidence seized pursuant to the search warrant should be suppressed because the government could not produce the video of the warrant application that is required to be maintained under subsection (e) of O.C.G.A. § 17-5-21.1.  Defendant also argues that, because the government could not produce the video, and because the time stamps indicated the warrant was issued only fifty one (51) seconds after the application, he has the right to challenge whether Judge Roberts acted with "detached scrutiny in issuing the warrant."  ([63]).  Defendant claims Judge Roberts did not take sufficient time to consider the Application and Affidavit with the detached scrutiny required.

On November 6, 2015, the Magistrate Judge issued her R&R, recommending denial of Defendant's Motion to Suppress.  The Magistrate

determined that the stamps do not necessarily reflect the length of time the judge reviewed the application, and there is no minimum amount of time required for a judge to review an application before issuing a search warrant. (R&R at 6). The Magistrate also found that there is no authority for the proposition that a violation of state procedural law rises to the level of a Fourth Amendment violation. She concluded that no Fourth Amendment violation occurred, and recommended that Defendant's Motion to Suppress be denied.

On November 11, 2015, Defendant filed his Objections to the R&R. Defendant objected to the R&R on the grounds that (1) the absence of a video recording of the process by which the Affidavit and Aplication was considered, which is mandated by state law, results in the elimination of any presumption of regularity with respect to the warrant application; (2) absent such a presumption, the government must present evidence that the warrant satisfied Constitutional requirements; (3) the Magistrate erred in failing to order an evidentiary hearing to conduct a *de novo* review of the warrant; and (4) the Magistrate erroneously interpreted established federal law, which holds that failure to comply with warrant statutes may result in suppression of evidence.

On December 2, 2015, the Court issued its Order [73] ("Order") adopting the Magistrate Judge's R&R. The Court found that, because a violation of state

law in procuring a warrant is immaterial to whether a federal court must suppress evidence, and because Defendant failed otherwise to show a Fourth Amendment violation requiring suppression, Defendant's Motion to Suppress was required to be denied.  (Order at 6-8).  The Court also noted that the good faith exception articulated by the United States Supreme Court in United States v. Leon, 468 U.S. 897 (1984) also required denial of the Motion to Suppress, because Defendant failed to offer any evidence that the issuing magistrate wholly abandoned his judicial role, or that any other exception applied.  (Id. at 11 n.6).

On January 5, 2016, Defendant filed his Motion for Reconsideration.  In it, Defendant states that following the issuance of the Court's Order, Defendant made an Open Records Request for the video of the application process and, in response to his request, received "a copy of the video of the warrant application that the United States had previously indicated was unavailable."  (Mot. for Reconsideration at 1).  Defendant provided a copy of the warrant application video ("Video") to the Court.  The forty eight (48) second-long Video shows Detective Williams stating to Judge Roberts that "it should be signed, judge," presumably referring to the warrant application he submitted.  Judge Roberts responds "OK you need to sign the warrant also," which Detective Williams appears to do.  The

Video does not have footage of Judge Roberts placing Detective Williams under oath.

Defendant argues that the Video constitutes newly discovered evidence warranting the Court's reconsideration of its Order. (Mot. for Reconsideration at 4-5). Defendant argues that, because the magistrate judge did not place Detective Williams under oath, the warrant was not supported by an oath or affirmation, as required by the Fourth Amendment. (Id. at 5-6). This Fourth Amendment violation, Defendant argues, requires suppression of the evidence seized pursuant to the warrant because it is fruit of the poisonous tree. (Id. at 8-9). Defendant argues that the Leon good faith exception does not apply, because the magistrate judge wholly abandoned his judicial duty to review the basis for the warrant application. Detective Williams thus cannot have reasonably presumed, in the absence of an oath or affirmation, that the warrant was valid. (Id. at 7).

On January 26, 2016, the Court issued its Order [82] requiring an evidentiary hearing at which the Court required testimony from Detective Williams regarding the process by which he prepared and transmitted this Application and Affidavit, and applications and warrants generally, using the court's video system.

On February 11, 2016, the hearing was conducted. At it, Detective Williams testified that he used Fulton County's electronic video system in applying for

warrants. (Hr'g Tr. [88] at 7-11). He testified that, typically, he types his application, affidavit, and defendant information directly into the court's computer system, and the duty judge can see everything he types. (Id. at 9-11). When he finishes typing, he calls the duty judge. He usually is told to wait for the duty judge to call back to consider the application. (Id. at 8, 13-15). Detective Williams stated that, when the judge calls him back, the judge usually reviews the affidavit, puts him under oath, and asks Detective Williams any questions he has about the application. After the judge decides to issue the warrant, he and Williams sign the electronic paperwork using electronic pads in their offices. (Id. at 7-11, 25-26). Detective Williams testified that he transmitted the Application and Affidavit at issue in this case before the time reflected on the Video. He recalls that Magistrate Judge Roberts reviewed the affidavit and asked him questions about it, all of which occurred before the events captured on the Video. (Id. at 22, 25, 26). He also testified that he cannot recall any occasion when he was not placed under oath, and if Judge Roberts did not place him under oath, he would have reminded Judge Roberts to swear him in. (Id. at 20, 25).

**II.   DISCUSSION**

    A.   <u>Legal Standard</u>

Motions for reconsideration are left to the sound discretion of the district court and are to be decided as justice requires.  <u>Belmont Holdings Corp. v. SunTrust Banks, Inc.</u>, 896 F. Supp. 2d 1210, 1222-23 (N.D. Ga. 2012) (citing <u>Region 8 Forest Serv. Timber Purchasers Council v. Alcock</u>, 993 F.2d 800, 806 (11th Cir. 1993)).  Motions for reconsideration are only appropriate when "absolutely necessary" to present:  (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.  <u>Bryan v. Murphy</u>, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003) (internal quotations and citations omitted).

Granting a motion to reopen a suppression hearing is appropriate where there is new evidence relevant to the issue of suppression. <u>See</u> <u>United States v. Rabb</u>, 752 F.2d 1320, 1323 (9th Cir. 1984) (reopening of suppression hearing is proper "if the record reveals matters" which affect the suppression determination); <u>United States v. Tzakis</u>, 736 F.2d 867, 872 (2d Cir. 1984) (upholding denial of motion to reopen "[i]n the absence of any further factual developments").  Generally, absent any new evidence or evidence that was unobtainable before the original suppression hearing, or any new issues that became relevant since the

7

initial hearing, the reopening of a suppression hearing is unwarranted. See United States v. Watson, 391 F. Supp. 2d 89, 94-95 (D.D.C.2005).  In this case the Motion for Reconsideration and the supplemental evidentiary hearing were appropriate considering the discovery of the Video.

    B.    Analysis

        1.    *Leon* Good Faith Exception

Defendant argues that the Video shows that Detective Williams was not placed under oath, and that Detective Williams's inconsistent testimony shows that he "has engaged in pretext and attempted to shape his story to conform to the facts of the case as they emerged." (Post-Hr'g Br. [87] at 6).  First, the Court disagrees with Defendant's characterization of Detective Williams's testimony.  Having carefully watched the manner in which Detective Williams testified and having carefully considered the content of his testimony, the Court finds Detective Williams's testimony consistent, thoughtful, honest and credible.  The Court finds credible his testimony that, even though not shown on the Video, he believes he was placed under oath and was asked some questions about his affidavit before the warrant was issued by Magistrate Judge Johnson.[1]

---

[1]    The Court further finds that the Video does not depict all of the warrant application process and does not depict all of Magistrate Judge Johnson's review of and questions about the application before the warrant was issued.

8

Even if Detective Williams was not placed under oath—and the Court finds that he was—the Leon good faith exception would apply. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation*, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. (emphasis added).

The oath requirement is meant to impress upon the swearing individual a sense of obligation to tell the truth, the theory being that "those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed." United States v. Turner, 558 F.2d 46, 50 (2d Cir. 1977); see also United States v. Trainor, 376 F.3d 1325, 1332 (11th Cir. 2004) (noting that an oath "may induce a feeling of special obligation to speak the truth, and it may also impress upon the witness the danger of criminal punishment for perjury, to which the judicial oath or an equivalent solemn affirmation would be a prerequisite condition"). An oath or affirmation to support an arrest warrant reminds both the officer seeking the warrant and the judge issuing it of the importance and solemnity of the process involved, and it protects the person being

arrested "from impermissible state action by creating liability for perjury or false swearing for those who abuse the warrant process by giving false or fraudulent information."  Perrin v. City of Elberton, Ga., No. 3:03-cv-106(CDL), 2005 WL 1563530, at *5 (M.D. Ga. July 1, 2005) (internal quotation marks omitted) (quoting United States v. Bueno-Vargas, 383 F.3d 1104, 1110-11 (9th Cir. 2004)).

"Under the exclusionary rule, evidence 'derived from' police misconduct is subject to exclusion as 'fruit of the poisonous tree.'"  United States v. Somers, 591 F. App'x 753, 755-56 (11th Cir. 2014) (quoting United States v. Terzado-Madruga, 897 F.2d 1099, 1112 (11th Cir. 1990)).  Even if the search warrant is invalid, suppression of the evidence seized would not be warranted if the officers executing the warrants reasonably relied in good faith on the validity of the warrants.  See Leon, 468 U.S. at 919-21.  The Leon good faith exception provides that "the exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant and the warrant was issued by a detached and neutral magistrate."  United States v. Sharp, No. 1:14-cr-229-TCB, 2015 WL 4641537, at *14 n.18 (N.D. Ga. Aug. 4, 2015).

Though the Eleventh Circuit has not addressed the issue, other circuits have uniformly applied the Leon good faith exception where the warrant issued despite

the failure of the issuing magistrate to swear the affiant.  See United States v. Hessman, 369 F.3d 1016, 1022-23 (8th Cir. 2004) (finding that law enforcement officers' reliance on an unsworn and unsigned search warrant was not objectively unreasonable); United States v. Callwood, 66 F.3d 1110, 1113 (10th Cir. 1995) (ruling the exclusion of evidence is not "the appropriate remedy" for issuing magistrate judge's failure to administer an oath to officer); United States v. Kurt, 986 F.2d 309, 311 (9th Cir. 1993) (applying Leon where officer changed the address for warrant on instructions of judge but was not placed under oath); United States v. Moore, 968 F.2d 216, 223 (2d Cir. 1992) (holding "the lack of an oath or affirmation by the presiding officer did not destroy the warrant's final validity"); United States v. Richardson, 943 F.2d 547, 548, 550-51 (5th Cir. 1991) (reversing district court's decision to suppress where law enforcement officer had not signed affidavit and magistrate judge did not require oath or affirmation of facts in affidavit); United States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988) (applying the good faith exception and rejecting a claim that a warrant was invalid because government agents applying for the warrant were not placed under oath or formally sworn); United States v. McMillian, No. 11-CR-193, 2012 WL 273735, at *12 (E.D. Wis. Jan. 27, 2012) (considering Kurt, Richardson, and Matias, and finding

that "[e]ven if the judge's failure to place Detective Gomez under oath violated the Fourth Amendment, the error was the judge's, not the detective's").

In Richardson, the Fifth Circuit found that the magistrate did not abandon his neutral and detached role, that the affiant was not dishonest or reckless in preparing the affidavit, and concluded that the warrant was not lacking in probable cause and was not facially deficient. 943 F.2d at 550. The court explained that deterrence was not served by punishing law enforcement officers for the mistakes of judges because "[t]he rare occasion when a magistrate accidentally fails to administer an oath cannot be eliminated by suppressing the evidence in that situation." Id. at 551 (citing Leon, 456 U.S. at 906). Finding it unlikely that law enforcement officers would attempt to evade the oath or affirmation requirement, the court noted that "[o]fficers cannot realistically hope to escape the oath or affirmation requirement either through an outright refusal to swear or through 'magistrate shopping.'" Id. In conclusion, the court stated:

> suppressing the evidence seized in the case will add nothing to protect against an affiant who misrepresents the facts to the magistrate, nor will it encourage officers to take their chances in submitting deliberately or recklessly false information, for they will expect to be sworn when preparing their warrant applications. Because suppression in this situation would not serve a deterrent purpose, the district court erred in applying the exclusionary rule.

Id.

In Hessman, a deputy sheriff prepared an unsigned and unsworn application for a search warrant and faxed it to a state magistrate, who signed the warrant and faxed it back to the deputy. 369 F.3d at 1018. In finding the warrant invalid, the district court found that the deputy failed to signed the application, and that the magistrate did not place the deputy under oath prior to signing the warrant and returning it to the deputy. Id. at 1019. The Eighth Circuit disagreed with the district court's analysis and applied the Leon good faith exception. The Eighth Circuit reviewed decisions of its sister circuits in similar circumstances as well as the purpose of the exclusionary rule, and found:

> the evidence against Hessman should not have been suppressed. If the Second, Fifth, Ninth, and Tenth Circuits would probably find the Hessman warrant valid, it is difficult to say Deputy Suhr's conduct in honoring the warrant was objectively unreasonable. The error in this case belonged to the issuing magistrate. Deputy Suhr did not attempt to avoid swearing a formal oath. Applying the exclusionary rule here would not serve a deterrent purpose, because "[t]he rare occasion when a magistrate accidently fails to administer an oath cannot be eliminated by suppressing the evidence in that situation." Richardson, 943 F.2d at 551.

Hessman, 369 F.3d at 1022.

Here, the Court agrees with the weight of authority and finds that the Leon good faith exception would apply even if the magistrate judge failed to administer an oath or affirmation. Law enforcement officers should not be punished for the errors of judges, Leon, 468 U.S. at 916, and any error in this case—if there was

13

any—belonged to the issuing judge, not Detective Williams. There is no evidence that Detective Williams acted in bad faith or attempted to evade the Fourth Amendment's oath or affirmation requirement. The reasoning in Hessman applies, because applying the exclusionary rule would not serve a deterrent purpose, because "[t]he rare occasion when a magistrate accidently fails to administer an oath cannot be eliminated by suppressing the evidence in that situation." Richardson, 943 F.2d at 551.

### 2. *Exceptions to the Leon Good Faith Rule*

There are four circumstances in which the good faith rule does not apply:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient-i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) (citation and internal marks omitted).

Defendant, appearing to invoke the third or fourth exceptions, argues that "Det. Williams could not reasonably presume the Warrant to be valid in the

absence of an oath or affirmation." (Mot. for Reconsideration at 7). He argues that the Government has represented that, according to Detective Williams, the usual process for issuing a video warrant includes "the magistrate judge ha[ving] the detective affirm the affidavit under oath," and, because the Video shows a "fundamental[] deviat[ion] from the usual process . . . Det. Williams could not have reasonably presumed the Warrant to be valid." (Id. at 7).

Assuming Detective Williams had not been sworn, the third exception "appli[es] when a warrant application does not contain sufficient indicia of probable cause." Hessman, 369 F.3d at 1023. The federal magistrate judge assigned to this case found, and the Court agreed, that the facts set forth in the Application and Affidavit established probable cause. Defendant does not contest that probable cause was established. The third exception does not apply here.

The fourth exception does not apply because the warrant was not so facially deficient in failing to particularize the place to be searched or the things to be seized so that no officer could reasonably rely upon it. The warrant particularly described the place to be searched (Defendant's apartment) and the things to be seized (illegal drugs, firearms and ammonization, etc.). (Search Warrant [63.1] at 1). Further, the court in U.S. v. Dedeaux, after a review of the relevant case law,[2]

---

[2] The court observed:

concluded that "an otherwise facially valid warrant is not rendered deficient if it is unsupported by oath or affirmation." No. 1:12-cr-40-TLS, 2013 WL 4012656, at *15 (N.D. Ind. Aug. 6, 2013). The Court agrees.[3]

Defendant next argues that the second exception applies, stating that "the Video shows that Judge Roberts abandoned his judicial role by issuing a rubber-stamp warrant without administering an oath or affirmation to Det. Williams." (Mot. for Reconsideration at 7; see also Post-Hr'g Br. at 4 n.3). Under

---

> [I]n Moore, the Second Circuit considered the four exceptions to the good faith rule set forth in Leon where a search warrant was unsupported by oath or affirmation. 968 F.2d at 222-23. The court reasoned that "the lack of an oath or affirmation by the presenting officer did not destroy the warrant's facial validity." Id. at 223 (citing Matias, 836 F.2d at 747). In Matias, the court found that "the failure to put the agent under oath was an obvious oversight, and, therefore, the agent reasonably relied on a facially valid warrant." Moore, 968 F.2d at 223 (citing Matias, 836 F.2d at 747). Because the district court found that the failure to place the presenting officer under oath was an oversight, it did not prevent the application of the good faith exception. Moore, 968 F.2d at 223.

U.S. v. Dedeaux, No. 1:12-cr-40-TLS, 2013 WL 4012656, at *15 (N.D. Ind. Aug. 6, 2013).

[3] The Court disagrees with Defendant's argument that the Video shows a "fundamental[] deviat[ion] from the usual process" and that therefore "Det. Williams could not have reasonably presumed the Warrant to be valid." (Mot. for Reconsideration at 7). Detective Williams testified that he could not recall any time when a magistrate judge did not place him under oath, and that he believed he was placed under oath by Magistrate Judge Roberts in this case prior to the beginning of the Video. There is no evidence to show—and no legal basis to find—that Detective Williams did not reasonably presume the warrant was valid.

16

the second exception, "courts must . . . insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police" in determining whether a warrant contains sufficient probable cause. Leon, 468 U.S. at 914. The Eleventh Circuit has observed that the Supreme Court has not been clear as to what sort of judicial behavior constitutes abandonment, other than where the issuing judge accompanied the officers on the warrant's execution (Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, (1979)), while other courts have found abandonment where the judge issued the warrant without reading it (United States v. Decker, 956 F.2d 773, 777 (8th Cir.1992)). See Martin, 297 F.3d at 1316-17. The Eleventh Circuit noted that "[i]t is clear . . . that a magistrate judge should read the warrant and make his own independent assessment as to whether the warrant and its underlying affidavit contain a sufficient amount of information to support a finding of probable cause." Id. at 1317. "A judge can be said to act as a mere 'rubber stamp' if he solely relies upon the fact that police officers are asking for the warrant." Id.

The Video, lasting only forty eight (48) seconds, appears to show that the magistrate judge barely reviewed the Application and Affidavit. At the February 11, 2016, evidentiary hearing, however, Detective Williams testified that he transmitted the Application and Affidavit to the magistrate judge before the

17

beginning of the Video, and that he recalled that Magistrate Judge Roberts reviewed the affidavit and asked him questions regarding it before the events captured on the Video. The Court found Detective Williams's testimony credible and consistent. On these facts, the Court cannot find that the magistrate judge wholly or even partially abandoned his judicial role, and he did not act as a rubber stamp by relying solely on the fact that Detective Williams asked for a warrant.[4]

The Court finds the warrant was properly applied for and issued, and, even if there were deficiencies in the application process, the Leon good faith rule applies, and Defendant cannot establish an exception to the good faith rule. Defendant's Motion for Reconsideration is denied.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Nigel Marc Gordon's Motion to Reconsider Motion to Suppress Evidence [77] is **DENIED**.

---

[4] Defendant does not argue that the first exception to the Leon good faith rule applies.

**SO ORDERED** this 19th day of February, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE